```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL EISENBERG,                                            :
                              Plaintiff,                      :
v.                                                            :
                                                              :      OPINION AND ORDER
THE COUNTY OF WESTCHESTER; JOSEPH                             :
K. SPANO, in his capacity as Commissioner of                  :      21 CV 4507 (VB)
the Westchester County Department of                          :
Corrections; FNU DEIGAN; JAHLIV NILES;                        :
and JOHN DOES I–X,                                            :
                              Defendants.                     :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Michael Eisenberg brings this action under 42 U.S.C. § 1983 and New York State law against defendants the County of Westchester, Commissioner Joseph K. Spano ("Comm'r Spano"), Sergeant Jeffry Deigan ("Sgt. Deigan") (collectively, the "County Defendants"), as well as unidentified correction officers (the "John Doe correction officers") and Jahliv Niles.

Now pending is the County Defendants' motion to dismiss the second amended complaint (Doc. #14 ("SAC")) pursuant to Rule 12(b)(6). (Doc. #15).

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor as summarized below.

At all relevant times, plaintiff was a pretrial detainee at the Westchester County Jail ("WCJ"). Niles was also an inmate at WCJ.

1

Plaintiff alleges that, on May 19, 2020, Niles attacked plaintiff in the recreation room at WCJ. Plaintiff contends that, prior to the altercation, the John Doe correction officers escorted Niles to the recreation room and left him in the room with plaintiff without any correction officers present, in violation of several WCJ policies. Plaintiff also alleges Niles had previously assaulted another inmate and otherwise exhibited violent propensities of which all defendants were aware.

According to plaintiff, Niles's attack continued until the John Doe correction officers returned to the scene, along with Sgt. Deigan, to separate the inmates.

Plaintiff contends that, after the altercation, the John Doe correction officers repeatedly delayed their responses to plaintiff's requests for medical care and then forced plaintiff to walk into a hospital "under his own power" (SAC ¶ 62), notwithstanding his purportedly severe injuries.

Plaintiff alleges the failure to protect him and provide him with adequate medical care were both indicative of a longstanding pattern of constitutional violations at WCJ identified by the Department of Justice in a report issued on November 19, 2009 (the "DOJ Report"), for which the County entered into a consent decree in 2015 (the "Consent Decree"), designed to monitor and remedy such violations.

This action was initially commenced in Supreme Court, Westchester County, and removed to this Court on May 19, 2021, based on the Court's federal question jurisdiction. Thereafter, plaintiff filed an amended complaint, which the County Defendants moved to dismiss. In response, plaintiff filed the SAC, following which the County Defendants filed the instant motion to dismiss.

As of the date of this Opinion and Order, the John Doe correction officers have not been

identified or served. Niles was served on May 26, 2021 (Doc. #13) but has not answered or appeared.

## DISCUSSION

I.  Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint according to the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id.

II.  Section 1983 Claims Against Sgt. Deigan

The County Defendants argue the Section 1983 claims against Sgt. Deigan must be dismissed because plaintiff fails plausibly to allege Sgt. Deigan's personal involvement in any federal constitutional deprivation.

The Court agrees.

A.  Legal Standards

1.  Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. A plaintiff cannot "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).

Moreover, a defendant's position as a supervisor does not impute personal involvement to that individual. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). Accordingly, a plaintiff must plead "the elements of [each] underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Id. at 620.

2.  Fourteenth Amendment Claims

Claims brought by pretrial detainees for failure to protect them from attacks by other inmates and for deliberate indifference to their medical needs are both analyzed under the Due

Process Clause of the Fourteenth Amendment.  See, e.g., Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).[2]

To state either claim, a plaintiff must plausibly allege an objective component, that the alleged deprivation was "sufficiently serious," and a subjective component, that defendants "acted with at least deliberate indifference."  See Darnell v. Pineiro, 849 F.3d at 29.

To plead the objective prong of a failure-to-protect claim, a pretrial detainee must plausibly allege an "unreasonable risk of serious damage to the plaintiff's health."  See Darnell v. Pineiro, 849 F.3d 17 at 30.  To plead the objective prong of a medical-needs claim, a pretrial detainee must plausibly allege a "sufficiently serious" deprivation of "adequate medical care."  See Charles v. Orange County, 925 F.3d 73, 86 (2d Cir. 2019).

The subjective prong of both claims requires a pretrial detainee to allege the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known" of the risk.  Darnell v. Pineiro, 849 F.3d at 35; Darby v. Greenman, 14 F.4th 124, 128 (2d Cir. 2021).

B.   Analysis

Here, plaintiff fails to plead any facts plausibly raising the inference that Sgt. Deigan, "through [his] own individual actions," was personally involved in any alleged constitutional deprivation.  See Tangreti v. Bachmann, 983 F.3d at 618.

With respect to the failure-to-protect claim, assuming arguendo plaintiff was placed at risk of serious harm by being left alone with Niles, plaintiff fails plausibly to allege Sgt. Deigan

---

[2]   Accordingly, the Court need not address plaintiff's references to the Fourth, Fifth, and Eighth Amendments, none of which applies to this case.

played any part in or had any knowledge of the decisions to escort Niles to the recreation room, leave him there with plaintiff without any correction officers present, or permit the comingling of high-risk and low-risk inmates.  And although plaintiff alleges Sgt. Deigan arrived at the recreation room after the attack had already begun, plaintiff does not allege Sgt. Deigan stood by and let the attack unfold, or that Sgt. Deigan otherwise was in a position to be on notice of the risk of serious harm posed by Niles to plaintiff in particular.³  Plaintiff is thus left with allegations regarding Sgt. Deigan's role at WCJ that rely precisely on the type of "special test of supervisory liability" that is insufficient to raise an inference of personal involvement.  See Tangreti v. Bachmann, 983 F.3d at 618.

With respect to the deliberate-indifference-to-medical needs claim, plaintiff fails to specifically allege any involvement by Sgt. Deigan in any alleged deprivation of adequate medical care.  At most, plaintiff lumps Sgt. Deigan into conclusory, catch-all allegations that "defendants" denied, delayed, and obstructed medical care for plaintiff's injuries.  (See, e.g., SAC ¶¶ 48–49).  Indeed, the only defendants specifically alleged to have been involved in plaintiff's medical care in any way are the John Doe correction officers, whom plaintiff contends transported plaintiff to the hospital and then forced him to walk into the hospital under his own power.

Accordingly, plaintiff's Section 1983 claims against Sgt. Deigan must be dismissed.

---

³ In his opposition to the motion to dismiss, plaintiff cites to a transcript of his testimony pursuant to N.Y. Gen. Mun. L. § 50-h—which plaintiff attached to his opposition, but not to the SAC—for the proposition that Sgt. Deigan "observed Niles's attack by closed circuit television." (Doc. #19 ("Pl. Mem.") at 14).  Even assuming the Court could consider plaintiff's Section 50-h hearing testimony, the cited testimony makes no reference to Sgt. Deigan at all.  (See Doc. #19-1 at 19 (plaintiff's testimony that unspecified "guards" would have been observing the recreation room through "camera systems that are in place")).

III.     Section 1983 Claims against Comm'r Spano

The County Defendants argue plaintiff's Section 1983 claims against Comm'r Spano must also be dismissed for failure plausibly to allege Comm'r Spano's personal involvement.

The Court agrees plaintiff's Section 1983 claims against Comm'r Spano must be dismissed, but because they are redundant of his claims against Westchester County.

"[P]rison officials acting in their official capacity are simply agents of the County[,] rendering [a] Plaintiff's official-capacity claims against the Individual Defendants unnecessary and redundant of [the] Plaintiff's claims against the County."  Haslinger v. Westchester County, 2020 WL 2061540, at *4 (S.D.N.Y. Apr. 29, 2020) (dismissing deliberate-indifference claims against individual WCJ officials in their official capacity, including Comm'r Spano, as redundant of plaintiff's claims against Westchester County).

Here, plaintiff names Comm'r Spano as a defendant only "in his capacity as Commissioner of the [Westchester County Department of Corrections]."  (SAC ¶ 14).  Moreover, plaintiff himself concedes in his opposition to the motion that Comm'r Spano "is a party to the matter [only insofar] as he is the official who has final policy making authority for the Jail."  (Pl. Mem. at 16).

Accordingly, plaintiff's Section 1983 claims against Comm'r Spano must be dismissed.

IV.     Section 1983 Claims Against Westchester County

The County Defendants argue plaintiff's Section 1983 claims against Westchester County must be dismissed because plaintiff fails plausibly to allege that execution of an official policy or custom of Westchester County inflicted his injuries.

The Court agrees.

A municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  To assert a Section 1983 claim against a municipality, a plaintiff must show the existence of an official policy or custom that caused the injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).

In the absence of a formal policy endorsed by the municipality or an individual action taken by a final policymaker, a plaintiff may satisfy the "policy or custom" requirement by alleging "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware" or "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."  See Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

Here, plaintiff alleges the DOJ Report is indicative of a "policy or custom" of constitutional violations at WCJ that was ignored by Westchester County, but his reliance on the DOJ Report is misplaced.[4]

---

[4]   To the extent plaintiff alleges "prior similar" incidents, complaints, and lawsuits respecting similar constitutionally deficient conduct independent of the DOJ Report (see, e.g., SAC ¶¶72–75), those allegations are wholly conclusory and thus cannot be credited.  See Ashcroft v. Iqbal, 556 U.S. at 679.  And while plaintiff is correct that an allegation of "a single decision by a[n] official who has final policymaking authority," like Comm'r Spano, can state a claim for municipal liability, plaintiff offers no allegations respecting Comm'r Spano's personal involvement in the at-issue incident.  (Pl. Mem. at 17).

First, the DOJ Report does not appear to identify either of the alleged constitutional deprivations at issue in this case as part of the "pattern" of constitutional failings uncovered at WCJ at the time the Report was issued.  (See Dep't of Justice, Letter Regarding Investigation of the Westchester County Jail at 7 (Nov. 19, 2009), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/Westchester_findlet_11-19-09.pdf).[5]  For example, although the DOJ Report acknowledged an unspecified number of assaults between inmates housed in different units at WCJ, it nevertheless found "that WCJ does not have high levels of inmate-on-inmate violence."  (Id. at 18).  And although the DOJ Report indeed identified certain constitutionally deficient aspects of medical care at WCJ—namely, infection control, inadequate access to dental care, and an inadequate medical grievance process—none of those purported deficiencies encompass the alleged delay and obstruction of medical care at issue in this case.  (Id. at 19); see also Yousef v. County of Westchester, 2020 WL 2037177, at *12 (S.D.N.Y. Apr. 28, 2020) ("At the very least, Plaintiff points to no specific respect in which [his son's] treatment violated [Westchester County's] obligations under the [the Consent Decree, arising from the DOJ Report].").

Second, even assuming the constitutional violations at WCJ identified by the DOJ Report are of the same type as the constitutional violations that allegedly took place in this case, "[t]he DOJ Report is from 2009, which is too far removed in time for an inference that conditions were the same" in 2020.  Yousef v. County of Westchester, 2020 WL 2037177, at *12.  Indeed, the

---

[5]     Because the SAC makes several references to the DOJ Report and the Consent Decree, the Court concludes that both documents, although not attached to the SAC, are incorporated by reference.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111.  Moreover, it is clear the SAC "relies heavily upon [their] terms and effect" because they are "integral" to the allegation that "Westchester County has had a long history failing to have or having improper safeguards for the safety of those imprisoned/detained within the County Jail."  (SAC ¶ 65); DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111.

Consent Decree itself states that by the time of its execution in 2015, Westchester County had already "made progress in addressing several of the conditions described" in the DOJ Report issued six years earlier. (Doc. #16-1 at 1). Accordingly, "[w]here such a gap in time exists between findings in an official report and Plaintiff's allegations, the events are too disconnected in time and personnel to plausibly allege a policy, practice, or custom." Moses v. Westchester Cnty. Dep't of Corr., 2017 WL 4386362, at *12 (S.D.N.Y. Sept. 29, 2017).

Accordingly, plaintiff's Section 1983 claims against Westchester County must be dismissed.[6]

V.      State-Law Claims

Both plaintiff and the County Defendants request that if the Court dismisses plaintiff's federal claims against the County Defendants, the Court should remand the case to state court.

Accordingly, having dismissed plaintiff's federal claims, which are the only claims over which the Court has original jurisdiction,[7] and in light of plaintiff's agreement with the County Defendants on how to proceed, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims, and will thus remand the case back to state court. See 28 U.S.C. § 1367(c)(3) (a district court may, in its discretion, decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction").

---

[6]     In the SAC, plaintiff also makes fleeting references to violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, but he fails to respond to the County Defendants' arguments that any such claims should be dismissed. Accordingly, the Court deems any claims under either statute to be abandoned. See Felix v. City of New York, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

[7]     According to the SAC, plaintiff resides in New York State, and thus there is no basis for the exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The Court expresses no opinion as to the merits of plaintiff's state-law claims against the County Defendants, or his claims against defendant Niles or the John Doe correction officers.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to remand this case to Supreme Court, Westchester County, and close the case.

The Clerk is further instructed to terminate the motion.  (Doc. #15).

Dated: March 14, 2022
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge